UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| NICOLE HENNEGAN, | **AMENDED COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| -against- | Index No. 17-CV-3193(RJD)(VMS) |
| THE CITY OF NEW YORK, P.O. THADDEUS GRANDSTAFF, DET. LAWRENCE HOTALING, SGT. DAVID CHEESEWRIGHT, P.O. ANDREW KAMNA, P.O.'s John Doe and Jane Doe, | |
| Defendants. | |

_____

**AMENDED COMPLAINT**

Plaintiff by her attorney Gregory G. Smith, Esq. complaining of defendants CITY OF NEW YORK, et al., alleges:

**PRELIMINARY STATEMENT**

1. This is a civil rights action against the City of New York ("City") based on and arising out of the wrongful acts and omissions of the New York City Police Department ("Police Department" or "NYPD") and certain law enforcement officers as named above in which the Plaintiff seeks relief for the violation of her rights secured by the Fourth Amendment to the United States Constitution, and Article I Section 12 of the New York State Constitution. The purpose of this amended complaint is to add certain police officer defendants as referenced above to the action and to add a cause of action for race based discrimination under 42 U.S.C. Section 1981.

2. Plaintiff seeks compensatory damages, punitive damages, an award of costs and attorneys' fees, and such other and further relief as this court deems just and proper, for having been locked out of her home for several hours while police conducted an unlawful search and seizure of her home and damaged certain furniture, doors and locks inside of the home.

3. The grounds for this action arise out of wrongful, unlawful, and improper acts and omissions of Defendants, including without limitation, the NYPD and Police Officer Thaddeus Grandstaff, Detective Lawrence Hotaling, Sergeant David Cheesewright and Police Officer Andrew Kamna and other John and Jane Doe(s) police officers collectively ("defendants") acting under color of state law when they illegally searched Plaintiff's residence.

## JURISDICTION

4. Jurisdiction of this court is invoked pursuant to 28 U.S.C. Section 1331; 28 U.S.C. Section 1343; 42 U.S.C. Sections 1981, 1983 and 1988 and the Fourth Amendment to the United States Constitution and pursuant to Article 1, §12 of the Constitution of the State of New York. The amount in controversy exceeds $10,000.

5. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under the state law that are so related to claims in this action within the original jurisdiction of this Court and that form part of the same case or controversy.

## VENUE

6. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) because the Defendant does business and is located within the Eastern District of New York and because all or a

substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred within the Eastern District of New York.

## PARTIES

7. Plaintiff, NICOLE HENNEGAN, hereinafter ("Plaintiff" or "Hennegan") resides in Brooklyn, New York, and is a citizen of the United States.

8. At all times hereinafter mentioned defendant CITY OF NEW YORK was a municipal corporation organized and existing under and by virtue of the laws of the State of New York. Under the Charter of the City of New York, the City is responsible for the conduct of municipal agencies such as the New York City Police Department hereinafter ("NYPD" or "Police Department").

9. At all times hereinafter mentioned the NEW YORK CITY POLICE DEPARTMENT was, and is a municipal agency of the CITY OF NEW YORK and was charged with the responsibility of enhancing the quality of life in New York City by working in accordance with constitutional rights to enforce the law.

10. At all times relevant herein defendant Police Officer Thaddeus Grandstaff was employed by the City of New York through the NYPD. At all times relevant defendant acted under color of state law in the course and scope of his duties and functions as agent, servant, employee, and officer of the NEW YORK CITY POLICE DEPARTMENT. P.O. Thaddeus Grandstaff is sued here in his official and personal capacity.

11. At all times relevant herein defendant Detective Lawrence Hotaling was employed by the City of New York through the NYPD. At all times relevant defendant acted under color of state law in the course and scope of his duties and functions as agent,

servant, employee, and officer of the NEW YORK CITY POLICE DEPARTMENT. Det. Lawrence Hotaling is sued here in his official and personal capacity.

12. At all times relevant herein defendant Sergeant David Cheesewright was employed by the City of New York through the NYPD. At all times relevant defendant acted under color of state law in the course and scope of his duties and functions as agent, servant, employee, and officer of the NEW YORK CITY POLICE DEPARTMENT. Sgt. David Cheesewright is sued here in his official and personal capacity.

13. At all times relevant herein defendant Police Officer Andrew Kamna was employed by the City of New York through the NYPD. At all times relevant defendant acted under color of state law in the course and scope of his duties and functions as agent, servant, employee, and officer of the NEW YORK CITY POLICE DEPARTMENT. P.O. Andrew Kamna is sued here in his official and personal capacity.

14. At all times relevant herein defendant Police Officers John and Jane Doe were employed by the City of New York through the NYPD. At all times relevant defendants acted under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NEW YORK CITY POLICE DEPARTMENT. They are sued here in their official and personal capacity.

## ADMINISTRATIVE PROCEEDINGS

11. On July 12, 2016, within ninety days after the claims arose, plaintiff caused a Notice of Claim, in proper form, to be duly filed with the Comptroller's Office and 30 days has passed and the claim has not been paid or adjusted. This action is brought within one year and ninety (90) days limitation of time applicable to state law claims against the City of New York.

## STATEMENT OF CLAIM

12. On May 5, 2016 at approximately 3:00 p.m. approximately twelve (12) plain clothes police officers, including, but not limited to, the above named individual defendants P.O. Grandstaff, Det. Hotaling, Sgt. Cheesewright and P.O. Kamna some with police badges exposed, arrived at Plaintiff's home located at 788 Howard Avenue, Apartment 2A, Brooklyn, New York and ran into Plaintiff's apartment when the door was opened.

13. None of these aforementioned defendant police officers possessed a warrant to search Plaintiff's home. Plaintiff was not home at the time the police officers conducted their warrantless search of her home. Plaintiff was at work at the Federation for Multicultural Programs located on Van Sinderen Avenue in Brooklyn, New York.

14. At the time police entered Plaintiff's residence there were ten (10) children residing in the apartment. Seven (7) were Plaintiff's foster children and three (3) were Plaintiff's biological children. The childrens' ages ranged from twenty (20) years old to one (1) years old.

15. When Plaintiff arrived home at approximately 4:30 p.m. on the day in question she observed approximately twelve (12) plain clothes police officers inside of her home. Plaintiff observed all of her children outside of their home on the first floor landing in the lobby area of the apartment building.

16. Police (names and badge numbers unknown) told Plaintiff that they had a search warrant however, when Plaintiff asked police to show her the warrant they refused and never produced a warrant of any kind.

17. Plaintiff observed that her bedroom door was open, the lock was broken and the door frame damaged.

18. Plaintiff observed that her bathroom door frame was damaged and the lock was broken too.

19. Police gained access to Plaintiff's apartment by running through the front door of the apartment when a friend of the family was leaving.

20. Plaintiff observed police officers standing in her apartment milling around and searching in every room of the apartment including four (4) bedrooms, two bathrooms, dining room and living room.

21. Other police officers were observed seated in the living room and others were seated at Plaintiff's dining room table eating Wendy's fast food.

22. Plaintiff observed clothes pulled out of drawers, broken doors, papers scattered over the floor, refrigerator door open and the top shelf inside of the refrigerator was damaged.

23. Plaintiff observed her young foster children crying in the hallway downstairs in the lobby while sitting on a window sill.

24. Police ordered everybody out of the apartment at 3:00 p.m. and would not permit anybody to return to the apartment until 12:00 Midnight.

25. Police had no reason to break into Plaintiff's apartment. There were no exigent circumstances.

26. Jason LNU who was Plaintiff's neighbor in apartment 2D told Plaintiff that police had run into his apartment first and found nothing then police rushed into Plaintiff's apartment.

27. Police recovered a .38 caliber pistol from a bedroom dresser drawer.

28. Police arrested Plaintiff's son Tysean Hennegan age 19 on suspicion of possession of a firearm.

29. On May 6, 2016 Plaintiff's son, Tysean, was released from Kings County Criminal Court, he was never charged with any crime. The Brooklyn District Attorney's Office declined to prosecute the case.

30. Plaintiff experienced emotional trauma and inconvenience for being without a proper place to sit, eat, sleep, use the toilet, wash, bath, medicate, clothe, comfort and care for she and her children.

31. Plaintiff suffered from a pre-existing seizure disorder that this occurrence worsened and exacerbated causing Plaintiff to seek medical attention and treatment at Brookdale Hospital for raised blood pressure, seizure attack and depression.

32. Plaintiff and her children and foster children are black/African Americans.

33. The section/neighborhood of Brooklyn where Plaintiff resides is largely a black population of people.

34. Upon information and belief, the police defendants involved in the search were non-black/African Americans.

35. Upon information and belief, the above named defendants have not conducted warrantless searches of residential houses and apartments where non-black/African American families reside.

36. Upon information and belief, if defendants did conduct a warrantless search of a home where non-black family(ies) reside police defendants did not set them outside of their home, bar them from re-entering their home, and thereby deny them access to: food, water, medicine, bathing, grooming, comfort, convenience, bathroom relief, etc. of their home.

## MUNICIPAL LIABILITY

**For the Actions of the Police Defendants Pursuant to Policies and Practices In Existence at the Time of This Action**

37. All of the acts by the police defendants described above were carried out pursuant to policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agency, the NYPD.

38. Defendant City and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the police defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts to continue.

39. The actions of the police defendants resulted from or were taken pursuant to *de facto* policies and/or well settled and widespread customs and practices of the City, which are implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons.

40. The existence of such unlawful *de facto* policies and/or well–settled and widespread customs and practices has been known to supervisory and policy–making officers and officials of the NYPD and the City for a substantial period of time.

41. Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officers and officials of the NYPD and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of

their authority, and instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

42. The City's policies and practices in existence at the time of the conduct complained of herein, which caused the plaintiff's injuries herein include, *inter alia*, the following:

    a. The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

    b. The failure to properly supervise, train, instruct, and discipline police officers with regard to search and seizure of private homes.

43. The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as evidenced by the police misconduct detailed herein.

44. The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encourage their misconduct as evidenced by the unlawful search and seizure detailed herein are of the type that can be eliminated or drastically curtailed by proper training at the police academy and proper follow-up training courses in the area of constitutional and citizen's Fourth Amendment rights to the Constitution to be free of unreasonable searches and seizures.

45. The aforementioned unlawful search and seizure that occurred at Plaintiff's home through police misconduct came as a result of a lack of proper training and sensitivity to the constitutional rights of black and brown peoples that live in urban

inner city communities such as inhabited by Plaintiff in Brooklyn and other communities in the City of New York.

46. Furthermore, the aforementioned unlawful search and seizure also resulted from a lack of proper police officer discipline, including but not limited to, termination, demotion, reprimand, suspension, loss of pay, re-training, and/or sensitivity training. These are the types of disciplines that should and could alleviate much of the type of unlawful police conduct as is complained of herein.

47. The City policies, practices and customs in existence at the time of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, *inter alia*, by the following:

48. Upon information and belief, defendant City and its agency, the NYPD, failed to effectively screen, hire, train, supervise and discipline their police officers, including the defendant police officers herein, for racial bias, lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to unlawfully search Plaintiff's home herein and lie to her about their possession of a search warrant.

49. On information and disbelief, the defendant police officers herein may have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to defendant City and its agency, the NYPD, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.

50. The Plaintiff's injuries were a direct and proximate result of the defendants' wrongful policies, practices, customs and/ or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers.

51. Defendant City knew or should have known that the acts alleged herein would deprive Plaintiff of her rights, in violation of the Fourth Amendment to the United States Constitutions and Article 1 §§ 1, 6, 11, 12 of the Constitution of the State of New York, including, without limitation, freedom from deprivation of liberty without due process of law.

52. The defendant City is directly liable and responsible for the acts of it's agency the NYPD and of the named and unnamed defendant police officers, because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the NYPD, and to require compliance with the constitutions and laws of the State of New York and the United States.

53. The defendant City is also directly liable and responsible for the acts of the individual police officer defendants for state law claims under the doctrine of respondent superior.

## FOR A FIRST CAUSE OF ACTION

**(Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution)**

54. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55. Defendants, acting under color of state law, subjected Plaintiff to the foregoing unlawful acts, and omissions without due process of law and in violation of 42 U.S.C. § 1983, thereby depriving plaintiff of rights, privileges and immunities secured by the Constitution and laws, including, but not limited to, those rights, privileges and immunities secured by the Fourth Amendment to the United States Constitution, including, without limitation, deprivation of the following constitutional rights, privileges and immunities:

56. Plaintiff was denied her constitutional right to be free from unlawful searches and seizures;

57. To the extent that any of these constitutional deprivations require a showing of specific intent and/or motive, the individual defendants acted intentionally, maliciously, with racially discriminatory motives and/or with reckless disregard for the natural and probable consequences of their acts.

58. Defendants' unlawful acts, and omissions, conducted without lawful justification, caused specific mental and emotional harm, economic injury, pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

## FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. Section 1981 Warrantless Search Based On Race)

59. Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

60. The actions/omissions of Defendants acting under color of state law constituted a deprivation of Plaintiff's right to contract based on race to be treated equally as guaranteed through the Fourteenth Amendment to the United States Constitution.

Accordingly, Plaintiff's home was searched without a warrant and said search was otherwise unlawful.

## FOR A THIRD CAUSE OF ACTION

### (Violation of Rights Under State Law Article 1 § 12 of the New York State Constitution)

61. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

62. Defendants, acting under color of state law, subjected Plaintiff to the foregoing unlawful acts, and omissions without due process of law and in violation of Article I § 12 of the New York State Constitution, thereby depriving Plaintiff of rights, privileges and immunities secured by the Constitution and laws of the State of New York including, but not limited to, those rights, privileges and immunities secured by the Article 1 § 12 to the New York State Constitution, including, without limitation, deprivation of the following constitutional rights, privileges and immunities:

63. Plaintiff was denied her state constitutional right to be free from unlawful searches and seizures;

64. To the extent that any of these constitutional deprivations require a showing of specific intent and/or motive, the individual defendants acted intentionally, maliciously, with racially discriminatory motives and/or with reckless disregard for the natural and probable consequences of their acts.

65. Defendants' unlawful acts, and omissions, conducted without lawful justification, caused specific mental and emotional harm, economic injury, pain and suffering in violation of Plaintiff's Constitutional rights as guaranteed under Article 1 Section 12 to the New York State Constitution.

### FOR A FOURTH CAUSE OF ACTION
**(Violation of Rights Under State Law)**

66. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

67. By the actions described above, each and all of the defendants, jointly and severally, have committed the following wrongful acts against the plaintiff, which are tortious under the laws of the State of New York:

    a. intentional infliction of emotional distress upon the plaintiff in that the defendants intended to and did cause the plaintiff severe emotional distress through a continuous course of misconduct culminating in the plaintiff's seeking medical treatment for seizure and depression.

    b. defendants' acts were outrageous in the extreme and utterly unacceptable in a civilized society;

    c. violation of other rights otherwise guaranteed to the plaintiff under the laws and/Constitution of the State of New York.

68. The foregoing acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed to him by the laws and Constitution of the State off New York.

### FOR A FIFTH CAUSE OF ACTION
**(Respondeat Superior Against the City of New York)**

69. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

70. The individually named police defendants, (other John/Jane Doe(s) police officers) and other individuals who joined with them in their wrongful conduct, were, at all times relevant to this Count, employees and agents of the City of New York. Each of

those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above, are therefore, directly chargeable to the City of New York under the state law doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following relief jointly and severally against all of the defendants, except that the punitive damages demand, is not, as a matter of law, recoverable against a municipality and therefore are not made against the City of New York:

1. Compensatory and punitive damages awards, each in separate amounts of $500,000.00 or such greater amounts as may be set by a jury for plaintiff.
2. A court order pursuant to 42 U.S.C. § 1988, that plaintiff is entitled to the cost involved in maintaining this action and attorney's fees;
3. Such other and further relief as this court may deem just and proper.

## DEMAND FOR A JURY TRIAL

A jury trial is hereby demanded on each and every count of the causes of action as pled herein.

Brooklyn, New York
December 11, 2017

\s\ *Gregory Smith*

_____
Gregory G. Smith (GS-9900)
Attorney for Plaintiff
81 Prospect Street, 7th Floor
Brooklyn, New York 11201
*Counsel for Plaintiff*